IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GREG GEGENHEIMER, | § § | |
| Plaintiff, | § § | |
| v. | § § | 1:16-CV-1270-RP |
| FRANK STEVENSON, et al., | § § | |
| Defendants. | § § | |

## ORDER

Before the Court is the parties' briefing on the issue of mootness, filed in response to the Court's Order to Show Cause. (Dkt. 42). Having considered the parties' submissions and the relevant law, the Court issues the following order.

## BACKGROUND

Plaintiff Greg Gegenheimer brought this challenge to section 81.020 of the Texas Government Code on December 5, 2016. At that time, the statute provided that the board of directors of the State Bar of Texas must include four minority bar members, defined as "a member of the state bar who is female, African-American, Hispanic-American, Native American, or Asian-American." Tex. Gov't Code § 81.002. Gegenheimer, a white male, alleged that the statute denied him equal protection of the laws in violation of the Fourteenth Amendment.

Senate Bill 416 ("S.B. 416"), which amended section 81.020, became effective as of June 15, 2017.[1] As amended by S.B. 416, section 81.020 no longer requires the appointment of minority-member directors. Instead, the president of the State Bar must appoint at-large directors who need not be minority members as previously defined by section 81.002. The statute now provides for "at-large directors" who are to be selected from those "who demonstrate knowledge gained from

---

[1] *See* S.B. 416, Texas Legislature Online,
*http://www.legis.state.tx.us/billlookup/History.aspx?LegSess=85R&Bill=SB416*.

experience in the legal profession and community necessary to ensure the board represents the interests of attorneys from the varied backgrounds that compose the membership of the state bar." S.B. 416 § 1(d).

Since recent legislative action has removed the statutory provisions that form the basis of Plaintiff's complaint, the Court ordered briefing on the question whether the passage of S.B. 416 mooted Plaintiff's suit. *See Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006) ("[S]tatutory changes that discontinue a challenged practice are 'usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'") (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. 2000)). The parties filed their briefing on June 30, 2017.

## DISCUSSION

**1.      Mootness**

"Suits regarding the constitutionality of statutes become moot once the statute is repealed." *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004). "[A]n exception to this mootness rule exists where there is evidence, or a legitimate reason to believe, that the state will reenact the statute or one that is substantially similar." *Id.* at 849 n.3. Plaintiff argues that this case is not moot because the challenged practice is likely to recur and because S.B. 416 does not eliminate the effects of the alleged violation. *See Fantasy Ranch*, 459 F.3d at 564. For the reasons that follow, the Court disagrees with both assertions.

Plaintiff does not suggest that the state legislature is likely to again enact a statute with the provisions he challenges. His argument instead focuses on the discretion afforded to the State Bar by S.B. 416's mandate that the State Bar president appoint individuals "who demonstrate knowledge gained from experience in the legal profession and community necessary to ensure the board represents the interests of attorneys from the varied backgrounds that compose the membership of

the state bar." S.B. 416 § 1(d). Though facially race- and gender-neutral, Plaintiff suggests that the new statute will nonetheless disadvantage white males.

Plaintiff's argument assumes that either white males lack the knowledge and experience necessary to represent the State Bar's constituencies or that the State Bar will act in a racially discriminatory manner toward white men despite their qualifications. The Court can adopt neither of these assumptions. Stereotypical notions "cannot form the basis upon which [courts] decide matters of constitutional principle." *Missouri v. Jenkins*, 515 U.S. 70, 119 (1995). Moreover, the Court is not prepared to assume—particularly in light of the pre-enforcement posture of a challenge to the new requirements—that the State Bar will enforce the new statute in a constitutionally impermissible way. On the contrary, the Court is to presume that the officials of the State Bar will properly discharge their duties. *See U.S.P.S. v. Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the actions of Government agencies . . . .") (citing *U.S. v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.")).

Because S.B. 416 eliminated the challenged provisions and there is no reasonable basis from which to infer the statute as amended has a discriminatory purpose or will have a discriminatory effect, the Court concludes that there is no reasonable likelihood that the challenged practice will recur. *See Fantasy Ranch*, 459 F.3d at 564. As stated in *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1511 (9th Cir. 1994), on which Plaintiff relies, "[Plaintiff's] fear of possible future injury is insufficient to constitute a reasonable expectation that the same alleged injury will recur."

Plaintiff next argues that the case is not moot because the effects of the alleged violation persist. More specifically, Plaintiff argues that the continued presence of minority-member directors on the board saves this action from mootness. The Court disagrees. The violation asserted in this

action is the denial of Plaintiff's ability to compete for open director positions on equal footing with racial and gender minorities. (Pl.'s Opp. Mot. Dismiss, Dkt. 28, at 1). The amendments of S.B. 416 afford a complete remedy for Plaintiff's injury: he is able to apply and be considered for an at-large director position without regard to his race or gender. The Court does not find it relevant that several minority-member directors remain on the board until their terms expire. As explained below, Plaintiff lacks standing to challenge their presence on the board—a remedy Plaintiff has in any case expressly disclaimed. (*See id.* at 10 n.3). In no case cited by Plaintiff, and in none reviewed independently by the Court, was the jurisdiction of a court over an otherwise moot controversy salvaged by reference to an injury that itself was insufficient to support federal jurisdiction.

Because S.B. 416 discontinues the practice challenged by Plaintiff and offers a complete remedy for the injury at issue in this case, the Court concludes that the State's voluntary cessation of the challenged conduct renders Plaintiff's action moot. The Court therefore no longer has jurisdiction over Plaintiff's claims. *United States v. Lares-Meraz*, 452 F.3d 352, 354–55 (5th Cir. 2006) ("A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents.") (quoting *Golding v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999)).

**2.     Leave to Amend**

If "necessary to avoid mootness," Plaintiff requests leave to amend his complaint to add a challenge to the provision of S.B. 416 allowing the current minority-member directors to retain their office until the expiration of their terms. (Pl.'s Resp., Dkt. 47, at 5). Plaintiff asserts that the removal of these directors is necessary to "vindicate his legal rights." (*Id.*). The Court, however, is convinced that Plaintiff lacks standing to seek this remedy,[2] and that amendment is therefore futile. *See Flores v.*

---

[2] The issue of Plaintiff's standing—including his standing to seek removal of the minority-member directors—was addressed in briefing on Defendants' motion to dismiss. Accordingly, the Court finds it appropriate to rule on this issue without additional briefing.

*Stephens*, 794 F.3d 494, 504 (5th Cir. 2015) ("In determining whether to grant leave to amend, the district court may consider whether . . . an amendment would be futile.").

"In order to establish standing for purposes of the constitutional 'case or controversy' requirement, a plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury is likely to be redressed by a favorable decision." *Heckler v. Mathews*, 465 U.S. 728, 738 (1984) (internal quotations and citations omitted).

Of concern to the Court is the first element of standing—injury. Plaintiff's response to the Court's order to show cause demonstrates that his claimed injury is the general denial of equal protection stemming from the minority-member directors' presence on the board. A denial of equal treatment can suffice as a sufficiently concrete and particularized injury. *Id.* However, merely being a member of a disfavored class is not enough to support standing; a plaintiff must also have been among those personally injured by the unequal treatment. *Allen v. Wright*, 468 U.S. 737, 755 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 (2014). In *Allen v. Wright*, for example, the Supreme Court found that a class of African American plaintiffs lacked standing to challenge the IRS's allegedly unlawful provision of tax-exempt status to private schools that discriminated on the basis of race. *Id.* at 754–56. Though the plaintiffs alleged that the IRS's policies denied equal treatment to African Americans, the Court held that the injury resulting from such unequal treatment could not support standing without a showing that the plaintiffs personally suffered the unequal treatment. *Id.* Recognizing standing where a plaintiff has suffered no personal injury, the Court held, "would transform the federal courts into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Id.* at 756 (quoting *United States v. SCRAP*, 412 U.S. 699, 687 (1973)).

Plaintiff here complains that the continued presence of minority-member directors on the State Bar's board violates his right to equal protection. This generalized complaint, as in *Allen*, "can be interpreted in two ways. It might be a claim simply to have the [State Bar] avoid the violation of law alleged in [his] complaint. Alternatively, it might be a claim of stigmatic injury, or denigration, suffered by all members of a racial group when the [State Bar] discriminates on the basis of race." *Id.* at 753–54.[3] These injuries, however, are insufficient to support standing without any showing that Plaintiff personally suffered an injury—in this case, a denial of an opportunity to compete on equal footing. Plaintiff cannot make such a showing here. He has never applied for a minority-member position and can obviously produce no facts to demonstrate that he is currently "able and ready" to apply for these past positions. *See Gratz v. Bollinger*, 539 U.S. 244, 262 (2003).[4] He has therefore never personally suffered from a denial of equal treatment that would support his standing to seek removal of the minority-member directors whose positions he never sought to obtain. As a mere "concerned bystander" to these past appointments, he may not use the federal courts as a "vehicle [to] vindicat[e] [his] value interests." *Allen*, 468 U.S. at 756.

Plaintiff's citation to *Sessions v. Morales-Santana* does not aid him. Plaintiff cites the Court's statement that "a mandate of equal treatment . . . can be accomplished by withdrawal of benefits from the favored class," 137 S. Ct. 1678, 1698 (2017) (citing *Heckler*, 465 U.S. at 740), which Plaintiff

---

[3] Plaintiff's "follow the law" injury is further clarified by his explanation of his previously disclaiming seeking to unseat the minority-member directors. Plaintiff explains that he believed it would be unnecessary to seek this relief because he assumed that the State Bar "would respect a ruling invalidating the minority-member law and take corrective action." (Pl.'s Resp., Dkt. 47, at 5). In other words, he assumed the State Bar would "follow the law" and remove the minority-member directors.

[4] The parties disagree whether merely being able and ready to apply for a minority-member director position suffices to support Plaintiff's standing. The State Bar, for example, maintains that Plaintiff's failure to apply for a position defeats his standing. (*See* Defs.' Mot. Dismiss, Dkt. 24, at 1). Because it does not affect the outcome, the Court assumes without deciding that the "able and ready" standard is appropriate for establishing standing to seek prospective relief in competitive-harm cases. *Gratz*, 539 U.S. at 262 ("Plaintiff demonstrated that he was 'able and ready' to apply . . . . He therefore has standing to seek *prospective* relief . . . .") (emphasis added).

suggests entitles him to seek the removal of the sitting minority-member directors. However, the discussion in that case concerned a prospective remedy for a plaintiff whose standing to seek it was unquestioned. *See id.* at 1689 (noting that Morales-Santana's standing was undisputed). It did not involve the jurisdictional issues presented here. Nor is that case susceptible of the broad reading Plaintiff advances. The Court did not suggest, for instance, that "withdrawal of benefits from the favored class" encompassed retrospectively stripping those benefits—citizenship in that case—from all those who enjoyed favorable treatment under the law. Rather, *Heckler*, which the Court quoted, clarifies that the statement refers only to the "end of preferential treatment." *Heckler*, 465 U.S. 740 n.8 ("[W]e have often recognized that victims of a discriminatory government program may be remedied by an end to preferential treatment for others."). The actionable preferential treatment here was the ability to be considered for appointment as a director under section 81.020 of the Texas Government Code. Plaintiff has, through S.B. 416, received his remedy.

## CONCLUSION

For the foregoing reasons, the Court hereby **DISMISSES** Plaintiff's action for lack of jurisdiction and **DENIES** leave to amend his complaint to assert a challenge to the grandfather clause of S.B. 416. The Clerk's Office is directed to close this case.

**SIGNED** on July 5, 2017.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE